**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| THE J.M. SMUCKER COMPANY, </br> One Strawberry Lane </br> Orrville, OH 44667, </br></br> Plaintiff, </br></br> v. </br></br> ACE AMERICAN INSURANCE COMPANY, </br> 436 Walnut Street </br> Philadelphia, PA 19106, </br></br> Defendant. | Case No. _____ </br></br> Judge _____ </br></br> **COMPLAINT** </br></br> **DEMAND FOR JURY TRIAL** |

Plaintiff, The J.M. Smucker Company ("Plaintiff" or "Smucker"), for its Complaint against Defendant, ACE American Insurance Company ("ACE"), alleges as follows:

**NATURE OF THE ACTION**

1. This is an insurance coverage action for breach of contract and declaratory judgment arising from ACE's breach of its legal duties owed to Smucker, ACE's insurance policyholder, with respect to underlying third-party claims.

2. For years, Smucker purchased general liability insurance policies from ACE to protect Smucker against certain risks, including protecting Smucker against liability arising from alleged bodily injuries caused by Smucker's products. Recently, Smucker was sued in a series of putative class action lawsuits that seek damages because of bodily injuries allegedly resulting from bacterial contamination, and the resulting recall, of one of Smucker's food products, Jif®-brand peanut butter. These lawsuits now have been consolidated under the caption *Naythan A. Ward, et al. v. J.M. Smucker Company*, Case No. 5:22-cv-00885-JRA (the "Putative Class Action"). In addition, numerous other individuals have asserted claims against Smucker alleging that they were injured after consuming Smucker's peanut butter products.

3. When Smucker sought insurance coverage from ACE with respect to these claims, ACE did not honor its policy obligations. Instead, ACE refused to pay at least certain of the costs to defend against these claims, as the policies require, and has not yet paid any amount to Smucker with respect to these claims. To justify its refusal, ACE asserted incorrect coverage positions that would significantly reduce, or even entirely eliminate, the insurance coverage that Smucker paid valuable premiums to purchase.

4. In this Complaint, Smucker seeks damages for ACE's wrongful failure to pay amounts due and owing under the policies for Smucker's defense costs, and a declaration of ACE's policy obligations to Smucker with respect to the Putative Class Action and individual bodily injury claims.

## THE PARTIES

5. Smucker is a corporation organized and existing under the laws of the State of Ohio, with its corporate headquarters and principal place of business located in Orrville, Ohio.

6. ACE is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania. At all relevant times, ACE was either licensed in Ohio or authorized to transact the business of insurance in Ohio.

## JURISDICTION

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because it involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this district under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## BACKGROUND AND THE INSURANCE POLICIES

9. Smucker is a producer and distributor of retail consumer foods, including Jif®-branded peanut butter products.

-3-

10. Smucker purchased certain commercial general liability policies, including policies sold to it by ACE.

11. Specifically, Smucker purchased a comprehensive general liability insurance policy from ACE, with a policy period from May 1, 2021 to May 1, 2022 (the "2021 Policy"). The 2021 Policy is identified as Policy No. XSLG72483820.

12. Smucker also purchased a comprehensive general liability insurance policy from ACE, with a policy period from May 1, 2022 to May 1, 2023 (the "2022 Policy" and, collectively with the 2021 Policy, the "Insurance Policies"). The 2022 Policy is identified as Policy No. XSLG72494611. Smucker does not attach copies of the Insurance Policies to this Complaint because ACE already has copies of them, but Smucker will provide copies to ACE or the Court upon request.

13. Smucker paid in full all premiums required under the Insurance Policies, paying in total hundreds of thousands of dollars to purchase the insurance coverage offered by each of the Insurance Policies.

14. Smucker is the "Named Insured" under each of the Insurance Policies.

15. Each of the Insurance Policies separately provides limits of liability of $1,750,000 for each "Occurrence" and $3,000,000 in the aggregate for claims that fall within the "products-completed operations hazard," as those terms are defined in the Insurance Policies.

16. Each of the Insurance Policies is subject to a retained limit of $250,000 per "Occurrence," as defined in the Insurance Policies. ACE's payment obligations arise only after Smucker incurs defense costs or liabilities equal to the retained limit of $250,000 with respect to any "Occurrence."

17. All applicable conditions precedent to recovery, if any, have been satisfied under each of the Insurance Policies, or, alternatively, all conditions precedent have been waived.

18. The Insurance Policies require ACE to pay Smucker defense and indemnity costs (including for settlements) for Smucker's costs in connection with the Underlying Claims, as that term is defined below.

19. Defense costs erode the retained limits of the Insurance Policies, but they do not erode the Insurance Policies' limits of liability.

20. Rather, once the retained limit has been exhausted, ACE becomes liable to cover defense costs until its applicable limits of liability have been exhausted by ACE's payment of "Ultimate net loss," which the Insurance Policies define to include judgments or settlements but not defense costs.

21. The Insurance Policies each define the term "Occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

22. The Insurance Policies each contain a Lot or Batch Clause Endorsement, which provides in relevant part that:

> Any "bodily injury" or "property damage" that:
>
> A. Is included in the "products-completed operations hazard";
>
> B. Arises from the substantially same general harmful condition, cause, defect, error or suspected deficiency; and
>
> C. Arises out of any one "lot" of "your product" that is prepared or acquired by you;
>
> shall be considered as a single "occurrence". Such "occurrence" shall be deemed to occur when the "bodily injury" or "property damage" occurs for the first claim arising from such "lot".
>
> For the purpose of this endorsement, a "lot" means all goods or products prepared or acquired;
>
> A. During the time frame that is the normal amount of time for a single "lot" in accordance with the insured's customary procedures; and
>
> B. At a single production facility; and
>
> C. Prepared in accordance with the insured's customary production and quality control "lot" identification procedures.

23. The Lot or Batch Clause Endorsement does not state that it deletes or supersedes the Insurance Policies' definition of the term "Occurrence." To the contrary, the Lot or Batch Clause Endorsement states that: "All other terms, conditions and exclusions remain unchanged."

24. The express wording of the Lot or Batch Clause Endorsement does not purport to provide for any circumstances where liability arising from a single "Occurrence"—as the term is defined in the Insurance Policies—will nonetheless be divided into multiple "occurrences."

## THE RECALL AND UNDERLYING CLAIMS

25. In May 2022, the FDA investigated a multistate outbreak of *Salmonella*.

26. On May 20, 2022, Smucker initiated a voluntary recall of Jif®-branded peanut butter products that Smucker produced from its Lexington, Kentucky facility due to potential *Salmonella* contamination (the "Recall").

27. As a result of the potential *Salmonella* contamination, Smucker has been subject to thousands of claims seeking damages because of bodily injury and/or property damage that allegedly occurred during one or both of the policy periods (the "Underlying Claims").

28. Certain of the Underlying Claims are claims asserted by individuals. Specifically, Smucker has been sued by a number of individual plaintiffs seeking damages because of bodily injury that the underlying plaintiffs allegedly suffered as a result of consuming Jif® peanut butter.

29. Other of the Underlying Claims are putative class actions captioned: *Joe Piscotti v. J.M. Smucker Company*, No. 5:22-cv-01151-SL (N.D. Oh. filed June 29, 2022); *Tyneisha Ferguson v. J.M. Smucker Company*, No. 5:22-cv-00173-DCR (E.D. Ky. filed June 29, 2022); *Naythan Ward v. J.M. Smucker Company*, No. 5:22-cv-00885-JRA (N.D. Oh. filed June 29, 2022); *Cameron Bopp v. J.M. Smucker Company*, No. 2:22-cv-01812-BHH (D.S.C. filed June 8, 2022); and *John Kraljevich v. J.M. Smucker Company*, No. 5:22-cv-00134-GFVT (E.D. Ky. filed May 25, 2022).

30. On September 29, 2022, Judge John Adams of the United States District Court for the Northern District of Ohio consolidated all of the class actions into a single case, the Putative Class Action, captioned *Naythan A. Ward, et al. v. J.M. Smucker Company*, Case No. 5:22-cv-00885-JRA.

31. On January 2, 2023, the plaintiffs in the Putative Class Action filed a consolidated complaint (the "Consolidated Complaint").

32. The Consolidated Complaint seeks certification for a "Nationwide Class" of "[a]ll persons in the United States who purchased or consumed Jif® peanut butter products that were recalled[.]"

33. The Consolidated Complaint also seeks damages for, *inter alia*, "time and money spent to address symptoms and consequences of ingesting the contaminated Jif® peanut butter products[.]"

34. Other of the Underlying Claims are claims from third-party manufacturers that have alleged that their products were damaged by the incorporation of Smucker's products as an ingredient in those third-party manufacturers' own products.

35. The allegations asserted against Smucker in the Underlying Claims, the damages sought therein, and the sums expended to defend and settle the same are within the coverage provided by the Insurance Policies.

36. By letters dated February 27, 2023, and in prior correspondence, ACE acknowledged that certain of the Underlying Claims against Smucker, including the Consolidated Complaint, at least potentially seek damages of "bodily injury" that would trigger coverage under the Insurance Policies. However, as discussed below, ACE wrongfully asserted that the Lot or Batch Clause Endorsement applies to eliminate any obligation to defend or pay any amount to Smucker with respect to any of the peanut butter claims. On this basis, ACE has refused to pay amounts already owing under its Insurance Policies and anticipatorily refused to meet its future obligations under the Insurance Policies in connection with all of the Underlying Claims.

**ACE'S DENIALS AND INCORRECT APPLICATION OF THE POLICY WORDING**

37. Smucker provided timely notice of the Recall and the Underlying Claims to ACE.

38. Since then, Smucker has provided updates relating to the Underlying Claims to ACE.

39. ACE effectively denied coverage in a letter dated August 1, 2022.

40. In the August 1 letter, ACE acknowledged that the Insurance Policies define the term "Occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

41. In the August 1 letter, ACE conceded that all of the "bodily injury" and "property damage" asserted in the Underlying Claims "arises from the substantially same general harmful condition, cause, defect, error or suspected deficiency – namely, salmonella contamination."

42. However, ACE went on to incorrectly assert that it has no coverage obligations, based on its erroneous position that the Lot or Batch Clause Endorsement operated to create 225 separate "Occurrences" (one for each 24-hour period of production or "lot" impacted by the Recall), each of which ACE claims is subject to a *separate* $250,000 per occurrence retained limit. In other words, ACE's stated position is that Smucker would need to pay as much as $56,250,000 for each Policy (that is, $250,000 for each of 225 Occurrences), or $112,500,000 in total for the two Insurance Policies (that is, a set of 225 separate $250,000 retained limits for each of the two Insurance Policies), to satisfy the retained limits before ACE would have any coverage obligations. On this basis, ACE refused to pay any amount to Smucker under the Insurance Policies.

43. In a letter dated August 24, 2022, Smucker responded to ACE's coverage position and refusal to meet its defense duties or other payment obligations under the Insurance Policies.

44. In that August 24 response, Smucker explained, *inter alia*, that courts have almost universally rejected arguments by insurers that similar lot or batch provisions unambiguously apply to disaggregate what otherwise would be a single occurrence into multiple occurrences subject to multiple retained limits or deductibles. Among other cases, Smucker noted that the Delaware Supreme Court had rejected the precise argument upon which ACE refused to pay, in *ConAgra Foods, Inc. v. Lexington Ins. Co.*, 21 A.3d 62 (Del. 2011), long before ACE wrote the Lot or Batch Clause Endorsement in the Insurance Policies. Smucker also explained that ACE

should have been, and is deemed to have been, aware of that case's holding when it wrote the nearly identical policy language in the Insurance Policies.

45. In a letter dated September 15, 2022, ACE responded and changed its position with respect to the number-of-occurrences issue. In this letter, ACE argued, for the first time, that "each claimant's exposure to salmonella-contaminated peanut butter would normally constitute a separate 'occurrence.'" It took this position despite earlier acknowledging in its August 1, 2022 letter that all of the Underlying Claims arose from "the substantially same general harmful condition, cause, defect, error or suspected deficiency – namely, salmonella contamination" (that is, from a single Occurrence). ACE then reasserted that the Lot or Batch Clause Endorsement applied to reach the same result as its previous adverse position—that is, to mean that there were 225 separate "Occurrences," each of which requires payment of a $250,000 retained limit. Thus, although it switched its reasoning, it reaffirmed its conclusion that, to satisfy the Insurance Policies' retained limits, Smucker would have to pay as much as $56,250,000 for each Policy, or $112,500,000 in total, before ACE's coverable obligations would begin.

46. On September 20, 2022, Smucker informed ACE that Smucker had paid settlements in amounts that exceeded the $250,000 per Occurrence retention and requested reimbursement from ACE.

47. On October 3, 2022, ACE responded that it would only be obligated to pay if Smucker had incurred over $250,000 resulting from any single "lot" of peanut butter.

48. On February 27, 2023, ACE sent Smucker letters reiterating its refusal to pay defense costs or indemnity for certain claims against Smucker, including the Consolidated Complaint, again wrongly asserting that the Lot or Batch Clause Endorsement requires Smucker to pay as many as 225 separate $250,000 retained limits for each Policy before any of ACE's coverage obligations arise.

49. ACE has not agreed to pay or reimburse Smucker for Smucker's full defense or indemnity payments or for any other payments in connection with the Underlying Claims.

## FIRST CAUSE OF ACTION (BREACH OF CONTRACT)

50. The averments of each of the preceding paragraphs are incorporated herein by reference as if set forth at length.

51. The Insurance Policies are legally enforceable contracts between Smucker and ACE.

52. The Insurance Policies provide coverage, excess a retained limit, for defense expenses and damages that Smucker becomes legally obligated to pay, including the costs arising out of the Underlying Claims.

53. Smucker has incurred defense expenses and damages arising from the Underlying Claims in amounts exceeding $250,000, all of which were because of bodily injury caused by a single Occurrence.

54. Smucker has fully performed its obligations under the Insurance Policies.

55. ACE has breached its obligations under the Insurance Policies.

56. As a result of ACE's breach, Smucker has incurred, and will continue to incur, damages in an amount to be determined at trial, but in all events in excess of $75,000, exclusive of interest and costs.

## SECOND CAUSE OF ACTION (DECLARATORY JUDGMENT)

57. The averments of each of the preceding paragraphs are incorporated herein by reference as if set forth at length.

58. Pursuant to 28 U.S.C. § 2201, Smucker is entitled to a declaration by this Court of the parties' rights and obligations under the Insurance Policies at issue.

59. There exists an actual and justiciable controversy over the parties' legal rights, status, and relationships.

60. Declaratory relief from this Court will terminate this controversy and is necessary to preserve the parties' rights.

61. This Court has jurisdiction to declare the rights, status, and other legal relations of the parties.

62. As detailed above, based on the allegations in the Underlying Claims, ACE has a duty under the Insurance Policies to reimburse Smucker for defense and indemnity costs, excess of $250,000, that Smucker incurs in connection with the Underlying Claims.

63. ACE has not agreed to pay or reimburse Smucker for all of the defense or indemnity amounts ACE is obligated to pay in connection with the Underlying Claims.

64. Smucker seeks a judicial determination by this Court of ACE's obligations to pay future costs incurred by Smucker in the Underlying Claims.

65. Smucker seeks a judicial determination by this Court that the Underlying Claims arise from a single Occurrence.

66. Such judicial determinations are necessary and appropriate at this time under the circumstances alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendant:

- declaring and adjudging the rights and obligations of the parties with respect to defense and indemnity coverage for the Underlying Claims;
- for compensatory damages, together with pre- and post-judgment interest;
- requiring Defendant to pay Plaintiff's reasonable attorneys' fees in this action;
- requiring Defendant to pay Plaintiff for the costs of suit incurred herein; and
- providing for such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

Dated: March 21, 2023                      Respectfully Submitted,

/s/ *Matthew A. Chiricosta*
K. James Sullivan (0074211)
Matthew Chiricosta (0089044)
Fritz E. Berckmueller (0081530)
**CALFEE, HALTER & GRISWOLD LLP**
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
KJSullivan@Calfee.com
MChiricosta@Calfee.com
FBerckmueller@Calfee.com

Jonathan Cohen (*pro hac vice* anticipated)
Brian Koosed (*pro hac vice* anticipated)
**K&L GATES LLP**
1601 K Street, N.W.
Washington, DC 20006
Telephone: (202) 778-9000
Facsimile: (202) 778-9100
Jonathan.Cohen@klgates.com
Brian.Koosed@klgates.com

*Attorneys for The J.M. Smucker Company*

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Smucker demands a trial by jury of all issues triable of right by jury.

Dated: March 21, 2023                                  Respectfully Submitted,

/s/ *Matthew A. Chiricosta*
K. James Sullivan (0074211)
Matthew Chiricosta (0089044)
Fritz E. Berckmueller (0081530)
**CALFEE, HALTER & GRISWOLD LLP**
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
KJSullivan@Calfee.com
MChiricosta@Calfee.com
FBerckmueller@Calfee.com

Jonathan Cohen (*pro hac vice* anticipated)
Brian Koosed (*pro hac vice* anticipated)
**K&L GATES LLP**
1601 K Street, N.W.
Washington, DC 20006
Telephone: (202) 778-9000
Facsimile: (202) 778-9100
Jonathan.Cohen@klgates.com
Brian.Koosed@klgates.com

*Attorneys for The J.M. Smucker Company*