UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE J.M. SMUCKER COMPANY, ) | CASE NO. 5:23CV00607 |
| ) | |
| Plaintiff, ) | JUDGE JOHN R. ADAMS |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| ACE AMERICAN INSURANCE ) | |
| COMPANY, ) | |
| Defendant. ) | |

Pending before the Court is a motion for partial summary judgment filed by Plaintiff J.M Smucker ("Smucker"). Defendant Ace American Insurance Company ("ACE") has opposed the motion. This matter also appears before the Court on ACE's cross-motion for summary judgment which Smucker has opposed. Upon review, Smucker's motion for summary judgment is GRANTED.

I. Factual Background and Procedural History

Smucker manufactures, among other things, Jif-branded peanut butter products. A substantial quantity of these products were recalled due to potential exposure to salmonella. The instant suit stems from general liability insurance policies that Smucker purchased from ACE seeking coverage against business risks regarding bodily injuries from Smucker's products. After recalling 225 lots of peanut butter due to this *potential* salmonella contamination, thousands of claims were brought against Smucker alleging bodily injury, which prompted Smucker to rely on the two liability policies issued by ACE.

The policies at issue bind ACE to cover Smucker's defense costs for 'bodily injury' per 'occurrence'"[1] once Smucker has paid a "retained limit" of $250,000 per occurrence. This litigation arose because of the starkly different interpretations the parties have assigned to "occurrence." Smucker argues that thousands of underlying claims seeking damages for bodily injury due to salmonella contamination from Jif-branded peanut butter constitute a **singular** occurrence. However, ACE refuses to pay for Smucker's defense, claiming that even though the alleged injuries all arose from the "substantially same general harmful condition," "each claimant's exposure to salmonella-contaminated peanut butter was a separate occurrence." Under Ace's interpretation, Smucker must satisfy the retainer for 225 occurrences, or $56,250,000, before any coverage is available. The parties have both moved for summary judgment on that issue. The Court now resolves their arguments.

## II.     Legal Standard of Review

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id.* At 252. Further, on summary judgment, the inferences to be drawn from underlying facts must be viewed "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The pivotal question in deciding a motion for summary judgment is whether a reasonable fact finder *could* make a finding in favor of either party. *See Anderson* 477 U.S. at 250 ("The inquiry

---

[1] Occurrence: "an accident, including continuous or **repeated exposure** to substantially the same general harmful conditions."

performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

The initial burden of showing the absence of any "genuine issue" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury" or other fact-finder at trial. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A party opposing summary judgment must show that there are facts genuinely in dispute and must do so by citing to the record. Fed.R.Civ.P. 56(c)(1)(a).

> There is no duty imposed upon the trial court to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir.1989). *See also InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990) (district court not required to speculate on which portion of the record the non-moving party relies, nor is court obligated to "wade through" the record for specific facts). Dozens of other panels, many speaking in unpublished prisoner appeals, have dealt with the circumstance of a dispositive motion in want of a response and have consistently assumed without specific comment that a court's reliance on the facts advanced by the movant is proper and sufficient.

*Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992)

### III. Legal Analysis

In conducting its review of the matter, the Court has been adopted the stance *MIKMAR, Inc.* espoused regarding contract interpretation:

> "A phrase in one contract does not necessarily take the same meaning as the same phrase in another contract if the context suggests that the parties intended a different meaning… [B]ut the context suggests that the parties meant for the same meaning across these cases… [a]s the Ohio Supreme Court noted—the great weight of appellate authority to consider this question has interpreted similar insurance policies in the same way."

*MIKMAR, Inc. v. Westfield Ins. Co.*, 520 F. Supp. 3d 933, 939 (N.D. Ohio 2021), aff'd, No. 21-3230, 2022 WL 17832178 (6th Cir. Dec. 21, 2022).

Specifically with respect to the issue briefed by the parties, the Court has been mindful of the "cause" test prevalent in Ohio, Ohio public policy regarding defense obligations, and the plain language of the policy. The "cause" test that has been commonly applied by courts throughout Ohio identifies the number of occurrences by referencing "the cause or causes of the damage or injury, rather than by looking at the number of individual claims." *Scott v. Fetzer Co. v. Zurich Am. Ins. Co.,* 769 F. App'x 322 (6th Cir. 2019). Additionally, the Court has reviewed the low bar Ohio law has established for defense obligations, which is designed to protect the policyholder from uncertainty that may arise from the policy.

Here, it cannot be disputed that the bodily injuries stem from **a singular alleged** salmonella outbreak. Delaware Supreme Court's decision in *ConAgra* is instructive as it was premised upon a remarkably similar fact pattern. Therein, a facility dealt with peanut butter contaminated with salmonella and faced thousands of consumer claim. The defendant there, similarly relied on a nearly identical batching endorsement and would provide coverage only after Conagra paid numerous per-occurrence retained limits. In rejecting the defense position, that court found that the interpretation of "lot or batch" was ambiguous, as it could be "one that limits coverage and one that expands coverage." *ConAgra v. Lexington Ins. Co.*, 21 A. 3d 62 (Del. 2011).

Like *ConAgra*, other courts across the country agreed that Batching Endorsements are meant for optimizing coverage per occurrence. *See Nationwide Mutual Ins. Co. v. Lafarge Corp.*, Civ. Nos. H-90-2390, H-93-4173, Bench Op. (D. Md. Oc. 31, 1995). *See also Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co.* 609 A. 2d 440, 480 (N.J. Super. App. Div. 1992) ("minimize the number of occurrences in order to maximize coverage"); *Nat'l Union Fire Ins. Co. of*

*Pittsburgh, Pa v. Donaldson Co., Inc.*, 926 F.3d 1014, 1021 (8th Cir. 2019) (the main purpose is to reduce number of occurrences for bodily injuries arising from the same product); *Union Carbide Corp. v. Travelers Indem. Co.*, 399 F. Supp. 12,20-21 (E.D. Pa. 1975) (chose not to apply a "lot" as separate occurrences). The court in *Lafarge* explained that finding each lot as an "occurrence" would eviscerate insurance coverage, which was clearly not intended by either party. *Id*. Similarly, ruling in favor of ACE would create a similar circumstance – eliminating coverage until Smucker has incurred expenses of roughly $56,250,000. As ACE has no compelling reason for the Court to interpret the policy in such an illogical manner, the Court will resolve any perceived ambiguity in favor of the insured. *Scott Fetzer*, 769 F. App'x at 326. As such, the Court finds that Smucker is entitled to summary judgment.

The Court hereby holds that the underlying claims for bodily injury arise from a single occurrence as defined under the policies and that once Smucker has satisfied a single retained limit, ACE is obligated to reimburse Smucker for all defense costs that Smucker has incurred or will incur defending the remaining claims.

IV. **Conclusion**

Based upon the above, Smucker's motion for partial summary judgment (Doc. 17) is GRANTED, and ACE's cross-motion (Doc. 18) is DENIED. Within seven (7) days of this order, the parties shall submit a proposed scheduling order detailing what they believe remains to bring this litigation to its completion.

It is so ordered.

Date: March 26, 2024                     */s/ John R. Adams*
                                          JUDGE JOHN R. ADAMS
                                          UNITED STATES DISTRICT JUDGE